# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| ARCILLE JAMES, | ) |
| Petitioner, | ) 2: 07-cv-0269-PMP-PAL |
| vs. | ) |
| | ) **ORDER** |
| DWIGHT NEVEN, *et al.,* | ) |
| Respondents. | ) |

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, Arcille James, aka James Arcille, a state prisoner, is proceeding *pro se*. Before the Court is the petition and respondents' answer. Petitioner raises three grounds for relief related to the alleged ineffective representation by counsel in his criminal proceedings.

## I.    Procedural History

Petitioner was arrested and charged with robbery with the use of a deadly weapon and other lesser included or alternative charges when he stole various fragrances from an Ulta Salon in Las Vegas, Nevada, pushing past the security guard, Jerry Foster, and cutting his arm with a "small one-inch blade" pocket knife. Exhibit 1, Arrest Report, and Exhibit 2.[1]  Foster's injury required seven or eight stitches to close. *Id.*

Petitioner invoked his right to a speedy trial and was represented by the Clark County

---

[1] The exhibits referenced herein were provided by respondents in support of their Answer and are found in the Court's docket at ECF No. 17-1, *et seq.*

Public Defender's Office. Exhibit 3. Following various pre-trial motions, the trial commenced on September 22, 2003. The jury found petitioner guilty of Count I of the Information, Robbery with the Use of a Deadly Weapon. Exhibit 11. Petitioner was sentenced to two consecutive terms of 60 to 156 months in prison, the consecutive term being an enhancement for the deadly weapon use. Exhibit 13. The Judgment of Conviction was entered on January 20, 2004. Exhibit 14.

Petitioner appealed his conviction, again being represented by the Clerk County Public Defender's office. Exhibit 15. After full briefing, the Nevada Supreme Court affirmed the conviction on August 24, 2005. Exhibit 20.

Petitioner's post-conviction petition for writ of habeas corpus was filed on May 2, 2006. Exhibit 22. He filed a memorandum in support of the petition on June 16, 2006. Exhibit 25. The trial court denied the petition without conducting an evidentiary hearing and petitioner appealed. Exhibits 26 and 27. The Nevada Supreme Court affirmed the denial in an order entered on January 25, 2007. Exhibit 28.

Petitioner raises three claim for relief in his federal petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. The claims allege ineffective assistance of counsel at trial for (1) counsel's failure to properly review discovery in order to attack the deadly weapon enhancement, (2) counsel's failure to prevent a *Brady* violation, and (3) counsel's failure to prevent a violation under *Apprendi*.[2] The respondents have filed their answer to the petition and petitioner has not replied.

**II.    Legal Standards**

    A.    <u>Habeas Corpus Standard</u>

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d),

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –

---

[2] *Brady v, Maryland,* 373 U.S. 83, 87 (1963) and *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

>(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693-694 (2002).  A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of § 2254 "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent*." Lockyer v. Andrade*, 538 U.S. 63, 73 (2003), citing *Williams v. Taylor*, 529 U.S. 362, 405-406 (2000); *Bell,* 535 U.S. at 694.

Furthermore, a state court decision is an unreasonable application of clearly established Supreme Court precedent "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the prisoner's case." *Lockyer,* 538 U.S. at 73.  The "unreasonable application" clause requires the state court decision to be more than merely incorrect or erroneous; the state court's application of clearly established federal law must be objectively unreasonable. *Id*.  The state court's factual determinations are presumed to be correct, and the petitioner has the burden of rebutting that presumption by clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1).

B        Ineffective Assistance of Counsel

In *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970), the Supreme Court declared that "the right to counsel is the right to the effective assistance of counsel."  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Court established the standards by which claims of ineffective counsel are to be measured.  In *Strickland*, the Court propounded a two prong test; a petitioner

claiming ineffective assistance of counsel must demonstrate (1) that the defense attorney's representation "fell below an objective standard of reasonableness," and (2) that the attorney's deficient performance prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 688, 694.

Regarding the first prong -- commonly known as the "effectiveness prong" -- the *Strickland* Court expressly declined to articulate specific guidelines for attorney performance beyond generalized duties, including the duty of loyalty, the duty to avoid conflicts of interest, the duty to advocate the defendant's cause, and the duty to communicate with the client over the course of the prosecution. *Id*. Defense counsel's duties are not to be defined so exhaustively as to give rise to a "checklist for judicial evaluation ... [because] [a]ny such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions." *Id*.

The *Strickland* Court instructed that review of an attorney's performance must be "highly deferential," and must adopt counsel's perspective at the time of the challenged conduct, in order to avoid the "distorting effects of hindsight." *Id.* at 689. A reviewing court must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance ... [and] the [petitioner] must overcome the presumption that ... the challenged action might be considered sound trial strategy." *Id*. (citation omitted).

Construing the Sixth Amendment to guarantee not effective counsel *per se*, but rather a fair proceeding with a reliable outcome, the *Strickland* Court concluded that demonstrating that counsel fell below an objective standard of reasonableness alone is insufficient to warrant a finding of ineffective assistance. In order to satisfy *Strickland's* second prong, the defendant must show that the attorney's sub-par performance prejudiced the defense. *Id*. at 691-92. The test is whether there is a reasonable probability that, but for the attorney's challenged conduct, the result of the proceeding in question would have been different. *Id*. at 691-94. The Court defined reasonable

4

probability as "a probability sufficient to undermine confidence in the outcome." *Id*. at 694.

### Ground One

Petitioner first claims that he received ineffective assistance of counsel because counsel failed to thoroughly review discovery provided by the district attorney which would have highlighted witnesses to testify that petitioner was [not] seen with a weapon and would have allowed counsel to emphasize to the jury that the victim "never saw the Petitioner with any type of weapon." Petitioner suggests that counsel should have learned that witness Baldwin never saw a weapon at the time of the robbery and that the surveillance video of the Ulta Salon did not show petitioner in possession of any weapon.

Respondents argue that the claim is belied by the record or misrepresents various points in the record which have nothing to do with the discovery process.

A review of the trial transcript shows that the victim of the robbery, Jerry Foster, was the only one who testified to seeing the weapon. Foster testified at least ten times that he saw a knife or that petitioner had a knife. Exhibit 8, pp. 156, 160, Exhibit 9, pp. 19-20, 22, 53-55, 60-61, and 63-64. At one point, during cross-examination, Foster testified that he had not seen the entire knife, only the blade. Exhibit 9, p. 61-64. Thus, petitioner's claim is belied by the record before the Court. Moreover, in considering the claim, the Nevada Supreme Court neither misapplied clearly established federal law or made an unreasonable determination of facts based upon the record when the court found:

> Appellant failed to demonstrate that his counsel's performance was deficient and that he was prejudice. Counsel specifically cross-examined witnesses about whether they had seen appellant with a knife and presented the jury with the defense theory that appellant did not have a knife. Furthermore, because this court previously held that the State presented sufficient evidence to support appellant's conviction for robbery with the use of a deadly weapon and that the district court properly instructed the jury on the definitions of "deadly weapon' and "use," appellant necessarily failed to demonstrate prejudice.

Exhibit 28, pp. 2-3.

Ground one of the petition is without merit. The state court applied the *Strickland*

1  standard reasonably to the facts of the case.  Moreover, the court's factual determinations were also
2  reasonable given the evidence in the record.  Ground one must be denied.

3            Ground Two

4            Second, petitioner claims ineffective assistance of counsel based upon counsel's
5  failure to prevent *Brady*[3] violations.  Petition claims the prosecution wrongfully withheld the
6  victim's shirt, his medical records and the video surveillance tape of the Ulta Salon where the crime
7  occurred.  He suggests that these various objects would have been beneficial to his defense. For
8  example, he argues that the victim's shirt could have shown "no excessive damage from a non-
9  existant [sic] physical altercation to lacking any sign of a knife puncture."  He further suggests that
10 the victim's medical records could have allowed counsel to prove that Foster's injury did not come
11 from a knife" and the video tape would not have shown the petitioner with a weapon.   He argues
12 that counsel's failure to obtain and review these items was ineffective and that he was prejudiced
13 because he did not receive a fair trial.

14           In *Brady v. Maryland*, the United States Supreme Court  held "that the suppression
15 by the prosecution of evidence favorable to an accused upon request violates due process where the
16 evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the
17 prosecution." 373 U.S. 83, 87, 83 S.Ct. 1194, 1196 (1963).  There are three components of a true
18 *Brady* violation.  These include (1) the evidence at issue must be favorable to the accused, either
19 because it is exculpatory, or because it is impeaching; (2) the evidence must have been suppressed by
20 the State, either willfully or inadvertently; and (3) prejudice must have ensued. *Strickler v. Greene,*
21 527 U.S. 263, 281-282, 119 S.Ct. 1936,1948 (1999).  Such evidence is material "if there is a
22 reasonable probability that, had the evidence been disclosed to the defense, the result of the
23 proceeding would have been different." *United States v. Bagley,* 473 U.S. 667, 682, 105 S.Ct. 3375
24 (1985); *see* also *Kyles v. Whitley*, 514 U.S. 419, 433-434, 115 S.Ct. 1555 (1995).

25           Under these standards, petitioner must show that, because of counsel's failures, he
26

---

[3] *Brady v, Maryland,* 373 U.S. 83, 87, 83 S.Ct. 1194, 1196-97 (1963).

6

was denied evidence which was actually suppressed by the State, that the evidence was material to his case and would have affected the outcome. Petitioner has not done so. First, petitioner has not shown the evidence was withheld or that he had requested the evidence but it was denied. Second, he has not shown that the evidence was or would have been favorable to his defense. He does not indicate that the damage to the shirt, the medical records, or the videotape actually had any evidentiary value to the defense, so that the outcome of the trial would have been different. He merely speculates as to their potential value.

The Nevada Supreme Court determined that the items identified were not *Brady* material. Exhibits 20 and 28. On direct appeal, that court stated:

> Even assuming that the victim's shirt was either intentionally or inadvertently withheld, we cannot conclude that there was a *Brady* violation. Arcille [James] fails to demonstrate that the evidence at issue was favorable to his defense, or that he was prejudiced. [fn10: *See Strickler v. Greene,* 527 U.S. 263, 281-82 (1999).] Further, Arcille was aware of the existence of the shirt due to the crime scene photographs, yet he never requested to see or examine the shirt. And finally, even if evidence of the shirt had been disclosed to the defense, we conclude that there was no a "reasonable probability" that the outcome of the trial would have been different.
> 
> Next, Arcille contends that the State committed a discovery/*Brady* violation by not providing him with the videotape of the robbery in a timely fashion. We disagree.
> 
> * * *
> 
> We conclude that the district court did not abuse its discretion in resolving this discovery issue. Arcille has failed to demonstrate that he was prejudiced in any way by the district court's ruling, or that the State committed a discovery violation. We further conclude that the State did not impermissibly withhold the videotape of the robbery, and thus, did not violate the mandate of *Brady*.
> 
> Next, Arcille contends that the State committed another discovery/*Brady* violation when, "on the last day of trial, medical records were introduced into evidence that had not been turned over to the defense prior to the beginning of the trial." . . . To the extent that the physician's notes contained information from the victim about his present symptoms and the cause of his injury, and were pertinent to both diagnosis and treatment, the information was admissible under the medical records and diagnosis exception to the hearsay rule [footnote omitted]. Finally, because we conclude that there are no discovery and/or *Brady* violations, Arcille's contention that the cumulative effect of the alleged errors denied him a fair trial is without merit.

Exhibit 20, pp. 4-5 (certain footnotes omitted.) On appeal from post-conviction relief, the court

found that because there was no *Brady* violation, he failed to show that counsel's performance in preventing such a violation prejudiced him. Exhibit 28, p.3.

The state court's decisions were reasonable under the federal legal standard established by the United States Supreme Court in *Brady, Strickler*. and *Strickland*. Ground two will be denied.

Ground Three

Third, petitioner claims counsel was ineffective in allowing an *Apprendi*[4] violation to occur in that his sentence was wrongly enhanced for the use of a deadly weapon during the commission of the robbery without the jury determining the existence of the necessary facts. This claim is belied by the record and is without merit.

In *Apprendi*, the United States Supreme Court held that, except for the fact of a prior conviction, any facts that increase a defendant's sentence beyond the statutory maximum must be proved to a jury beyond a reasonable doubt. *Apprendi,* 530 U.S. at 490; *Wilson v.Knowles,* 31 F.3d 1295, 1297 (9th Cir. 2011).

Nevada law requires that where a crime is committed with the use of a deadly weapon, the sentence be enhanced. *See* Nevada Revised Statute (NRS) 193.165. Prior to its amendment in 2007, the statute applicable to petitioner read:

> Except as otherwise provided in NRS 193.169, any person who uses a firearm or other deadly weapon or a weapon containing or capable of emitting tear gas, whether or not its possession is permitted by NRS 202.375, in the commission of a crime shall, in addition to the term of imprisonment prescribed by statute for the crime, be punished by imprisonment in the state prison for a term equal to and in addition to the term of imprisonment prescribed by statute for the crime.

NRS 193.165. Thus, the enhanced sentence was only prescribed if it was proved that a deadly weapon was used in commission of the crime.

Here, the fact of the use of a deadly weapon in the course of the robbery was subject to proof beyond a reasonable doubt as evidenced by the verdict options offered the jury in its

---

[4] *Apprendi v. New Jersey,* 530 U.S. 466 (2000).

8

deliberations. Exhibit 11. The verdicts required the jury to find petitioner not guilty, guilty of robbery or guilty of robbery with the use of a deadly weapon. *Id.* It was the jury that entered the verdict of guilty of robbery with the use of a deadly weapon. Thus, there was no *Apprendi* violation present in petitioner's trial.

The Nevada Supreme Court said on the matter:

> Last, appellant claimed that his counsel was ineffective for failing to object on the basis that the deadly weapon enhancement violated of [sic] *Apprendi v. New Jersey* [fn 7: 530 U.S. 466 (2000). To the extent that appellant raised the underlying issue independently from his ineffective assistance of counsel claim, we conclude that the issue is waived; it should have been raised on direct appeal, and appellant did not demonstrate good cause for his failure to do so. *See* NRS 34.810(1)(b).] Appellant failed to demonstrate that his trial counsel's performance was deficient. The jury properly determined that appellant had used a deadly weapon in the commission of a robbery, and therefore, the deadly weapon enhancement did not violate *Apprendi* [fn 8: *See Blakely v. Washington,* 542 U.S. 296, 303 (2004) (stating that precedent makes it clear that the statutory maximum that may be imposed is "the maximum sentence a judge may impose solely on the basis of the facts reflected in the jury verdict or admitted by the defendant." (emphasis in original).]

Exhibit 28, pp. 3-4.

Petitioner cannot show that the state court's determination of the facts or its application of federal law was erroneous under the constraints of 28 U.S.C. § 2254. No relief shall be granted as to ground three.

The petition shall be denied.

### III.    Certificate of Appealability

Should petitioner wish to appeal this decision, he must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-951 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the

1  district court's assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529
2  U.S. at 484).  In order to meet this threshold inquiry, the petitioner has the burden of demonstrating
3  that the issues are debatable among jurists of reason; that a court could resolve the issues differently;
4  or that the questions are adequate to deserve encouragement to proceed further.  *Id.*

5     Pursuant to the December 1, 2009 amendment to Rule 11 of the Rules Governing
6  Section 2254 and 2255 Cases, district courts are required to rule on the certificate of appealability in
7  the order disposing of a proceeding adversely to the petitioner or movant, rather than waiting for a
8  notice of appeal and request for certificate of appealability to be filed.  Rule 11(a).  This Court has
9  considered the issues raised by petitioner, with respect to whether they satisfy the standard for
10 issuance of a certificate of appealability, and determines that none meet that standard.  The Court
11 will therefore deny petitioner a certificate of appealability.

12    **IT IS THEREFORE ORDERED** that this petition for writ of habeas corpus (ECF
13 No. 6) is **Denied.**

14    **IT IS FURTHER ORDERED** that no certificate of appealability shall issue.  The
15 Clerk shall enter judgment accordingly.

17    DATED this 30th day of March, 2011.

_____
PHILIP M. PRO
UNITED STATES DISTRICT JUDGE